550 So.2d 346 (1989)
Linda MECHE and Fred Meche, Plaintiffs-Appellees,
v.
Janet A. THIBODEAUX, et al., State Farm Mutual Automobile Insurance Company, Defendant-Appellant.
No. 88-459.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Rehearing Denied November 7, 1989.
*347 Voorhies & Labbe, Amos H. Davis, Lafayette, for plaintiffs-appellees.
Roy, Forrest & Lopresto, Stephen H. Myers, Lafayette, for defendant-appellant.
Before GUIDRY, LABORDE and KNOLL, JJ.
GUIDRY, Judge.
Fred and Linda Meche were injured in a two vehicle accident which occurred on March 15, 1985 in Lafayette Parish, Louisiana. *348 At the time of the accident, Fred Meche was one-half owner of a corporation known as Computer World, Incorporated and was driving a 1984 Ford van registered to, and owned by, Computer World. The van was insured by State Farm Mutual Automobile Insurance Company (hereafter State Farm) under policy number 432-8826-FO6-18 which was issued to Computer World, named Computer World as the "named insured" and which provided $100,000/$300,000 UM coverage in addition to the $5,000.00 per person per accident medical payments coverage.
The other vehicle involved in the accident, a 1984 Toyota Corolla, was owned and was being operated by Janet A. Thibodeaux. The Thibodeaux vehicle was insured by Travelers Insurance Company (hereafter Travelers) under a policy of automobile liability insurance with bodily injury limits of $10,000.00 each person and $20,000.00 each accident. The Meches instituted suit against Thibodeaux, Travelers and their UM carrier, State Farm.
Before the case went to trial, Travelers tendered and paid its policy limits and both Travelers and its insured (Thibodeaux) were released from the suit.
Prior to trial, State Farm paid Fred Meche a total of $105,000.00 and paid Linda Meche $23,000.00.
The matter was tried to a jury however, the parties agreed that the issues of coverage, stacking and penalties and attorney's fees would be decided by the trial judge. The jury fixed Fred Meche's damages at $182,000.00 and Linda Meche's damages at $32,000.00. The trial judge determined that a policy of insurance issued by State Farm to another corporation partly owned by Fred Meche, Business and Office Systems, Inc. (hereafter Business Systems), provided excess UM coverage to the plaintiffs and rendered judgment accordingly. Plaintiffs' demands for penalties and attorney's fees were rejected.
Defendant, State Farm, appealed urging error in the trial court's determination that, under the circumstances, the State Farm policy of insurance issued to Business Systems provided excess UM coverage to the Meches. Plaintiffs answered the appeal urging (1) error in the trial court's failure to award penalties and attorney's fees; (2) that the damage awards are inadequate; and, (3) error in the trial court's casting plaintiff, Linda Meche, with a portion of the costs.

INSURANCE COVERAGESTACKING
At the time of the accident, six policies of insurance issued by State Farm to Computer World and/or Business Systems (Computer World's predecessor corporation) were in effect covering six different vehicles. The insured under two of the policies was Computer World while the insured under the other four policies was Business Systems. A natural person was not named as an insured under any of the six policies.
At trial, plaintiffs argued that they should be allowed to avail themselves of the UM coverage under two of the six State Farm policies under the provisions of La.R.S. 22:1406 D(1)(c)(i) and (ii):
"c. If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Sub-Section (D)(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available the policy of insurance or endorsement shall provide the following:
With respect to bodily injury to an insured party while occupying an automobile not owned by said insured party, the following priorities of recovery under uninsured coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess *349 from other uninsured motorist coverage available to him. In no instance shall more than one coverage for more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
The trial judge agreed with plaintiffs on this point and, in his reasons for judgment, stated:
"Clearly the Computer policy on the subject vehicle was primary. The only question is whether another policy provided excess coverage. Clearly the other Computer policy did not. However, equally clearly, the Business policies did. These policies under Section IIIUninsured Motorist VehicleCoverage U stated that an insured is:
4. any other person (other than the named insured, here: Business) while occupying
b. a vehicle not owned by the insured, while being driven by the insured (a corporation can only drive through its agents, employees, officers, etc.) with the owner's consent.
Here the corporation, through its employee, plaintiff-husband, was operating a vehicle not owned by Business within the scope of the owner's (Computer) consent."
On appeal, State Farm argues that the Meches do not qualify as insureds for UM purposes under the Business Systems policies and the trial court erred in deciding otherwise. We agree and reverse.
The UM portion of the State Farm policies in question each defines insured[1] as:
"1. the first person named in the declarations;
2. his or her spouse;
3. their relatives; and
4. any other person while occupying:
a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or your spouse; or
b. a car not owned by you, your spouse or any relative, or a trailer attached to such a car. It has to be driven by the first person named or that person's spouse and within the scope of the owner's consent.
Such other person occupying a vehicle used to carry persons for a charge is not an insured.
5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above."
There is no "person" (human being) designated as the named insured in either of the four policies in question. Business and Office Systems, Inc., is a corporation and has an identity, conferred by law, separate and apart from its stockholders and officers. Therefore, since the named insured is a corporation, the Meches were not insureds under numbers 1, 2 or 3 above. They would have been insureds under 4 above, as they were in a "non-owned" car at the time of the accident, except that the non-owned vehicle in which they were riding was not being "... driven by the first person named (human being) or that person's spouse ..." (see 4(b) above). Just because Mr. Meche (the driver) was a stockholder and executive officer of the named insured (the corporation), it did not make him a named insured as all natural and/or juridical persons have distinct, separate legal personalities and patrimonies.
Reading the policy as a whole, since Business Systems is the only named insured, UM coverage was provided only to any person while occupying the vehicle described on the declarations page. Since the Meches were not in any vehicle described in a policy issued to Business Systems, they had no UM coverage under any of those policies. As they were not an insured under any Business policy, none of the policies were available for stacking purposes. We reject the trial court's strained interpretation of Section III Uninsured Motorist VehicleCoverage U 4.b. That coverage *350 is simply not applicable where the named insured is not a natural person.
Our brethren of the First Circuit reached the same conclusion in Pierron v. Lirette, 468 So.2d 1305, 1307-1308 (La.App. 1st Cir. 1985). In addressing an almost identical fact situation, the Pierron court stated:
"In this assignment of error, plaintiffs contend that Roy J. Pierron, as vice-president and executive officer of Hy Fashions, Inc., was covered under the uninsured motorist provision of the policy of insurance in the amount of $25,000.00 issued by State Farm to Hy Fashions, Inc.
The Louisiana Uninsured Motorist Statute LSA-R.S. 22:1406, in effect at the time of the accident, required that insurance policies provide uninsured motorist coverage for a person who qualifies as an "insured" under the policy. However, a person who does not qualify as an "insured" under the policy of insurance is not entitled to uninsured motorist coverage. Seaton v. Kelly, 339 So.2d 731 (La.1976); Malbrough v. Wheat, 428 So.2d 1110 (La.App. 1st Cir.1983); Schmidt v. Estate of Choron, 376 So.2d 579 (La.App. 4th Cir.1979).
In the instant case, the uninsured motorist insurance portion of the State Farm policy defines insured as:
(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
(b) any other person while occupying an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
Designated insured is defined as "an individual named in the declarations under Designated Insured." The uninsured motorist portion of the policy also indicates that the definitions of insured and named insured applicable to Part 1 (basic automobile liability insurance) also applies to the uninsured motorist insurance. Part 1 of the policy defines insured as:
(a) the named insured;
(b) any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such automobile is being used in the business of the named insured; ...
The decedent, Roy J. Pierron, was not a named insured under the State Farm policy since the named insured is Hy Fashions, Inc. Nor was Pierron a designated insured under the policy because there is no individual named in the declaration of the policy under designated insured. Furthermore, since the named insured is a corporation, Pierron cannot reside with or be a relative of the named insured.
Furthermore, Pierron was not occupying an insured highway vehicle. The vehicle insured by State Farm was a 1979 Lincoln owned by Hy Fashions, Inc. At the time of the accident, Pierron was driving an automobile owned by H & R Towing, Inc., which was not a temporary substitute vehicle. See Seaton v. Kelly, supra; Malbrough v. Wheat, supra; Schmidt v. Estate of Choron, supra.

Clearly, Pierron does not qualify as an insured under the State Farm policy.
Plaintiffs strenuously contend that if no uninsured motorist coverage is provided under the Hy Fashions, Inc. policy to Mr. Pierron, the company has been paying premiums for no coverage. Plaintiffs, however, are mistaken in this contention. The policy clearly provides uninsured motorist coverage for anyone occupying the insured highway vehicle, and, if Pierron had been occupying the insured vehicle, the uninsured motorist provisions of the policy would have applied. Everytime the insured automobile (the 1979 Lincoln) was used, whoever was occupying it was receiving the benefits of the uninsured motorist coverage. Even though Hy Fashions, Inc. is a family corporation with Mr. Pierron as vice-president and his wife as president,3 it is unfortunate that they were neither the named nor designated insureds. Clearly, if the policy had been in either Mr. or Mrs. Pierron's name, or if Mr. Pierron *351 had been a designated insured, uninsured motorist coverage would have been applicable. Unfortunately, in the instant case, Mr. Pierron was not in the vehicle owned by Hy Fashions, Inc. and insured by State Farm, and the vehicle that he was occupying was owned by another family corporation, which did not have uninsured motorist protection.4" (Footnotes omitted).
Accordingly, we reverse that portion of the trial court judgment which found that any one of the Business Systems policies were available for stacking.

DAMAGES
Considering our ruling on the stacking issue, we need not address the quantum of Fred Meche's damages as the amount awarded him exceeds the insurance available from State Farm and no defendant remains from whom he can collect such excess.
Mrs. Linda Meche was awarded a total of $32,000.00 in damages: $11,000.00 for pain and suffering, $13,000.00 for past medical expenses, $3,000.00 for future medical expenses and $5,000.00 for loss of income.
While this court may have made a different award, we do not find the jury's award in this case to be lower than the lowest amount the trier of fact could have reasonably awarded. See Reck v. Stevens, 373 So.2d 498 (La.1979), and Coco v. Winston Industries, 341 So.2d 332 (La.1976).
In the March 1985 accident, Mrs. Meche suffered a mild concussion, a whiplash, a laceration to her left index finger and a contusion to her right knee. Dr. Luiz deAraujo who treated Mrs. Meche for the concussion and for a cervical sprain discharged her in July of 1985 as fully recovered. Dr. Robert Tarpy treated Mrs. Meche for complaints of a popping sensation and decreased hearing in the left ear. In June 1985, Dr. Tarpy successfully repaired a rupture of the round window membrane of the left ear thereby eliminating Linda's complaints of vertigo and ringing in the ear. Dr. Tarpy assigned Mrs. Meche a 10% hearing loss in the left ear. However, this was the exact same amount of hearing loss assigned to Mrs. Meche by Dr. Charles E. LeBlanc on March 31, 1981, after treating plaintiff for a head injury in an October 1980 accident.
In August 1985, Mrs. Meche consulted Dr. Kenneth J. LaBorde in connection with the cut she sustained on her left index finger. Dr. LaBorde found no irregularities on x-rays of plaintiff's hand and wrist and was of the opinion that the stiffness and discomfort of which Mrs. Meche complained would resolve itself over the next two to three months without any further therapy or treatment.
Mrs. Meche returned to see Dr. deAraujo in March of 1986. At that time, she complained that she was once again having problems with neck pain which now radiated into the interscapular region. In an attempt to discover the cause of his patient's symptoms, Dr. deAraujo ordered a CAT scan. The CAT scan suggested bulging cervical discs at the C5-6 and C6-7 levels, but a MRI scan performed to confirm the possible bulging discs proved to be normal in the suspicious areas. However, an incidental finding of the MRI scan showed a lesion which was suggestive of a possible tumor of a cranial nerve.
The finding of the brain lesion led to further doctors' consultations, hospitalizations and tests. Dr. Ronald Ritchey, an internist who treated Mrs. Meche was of the opinion that lesions seen on a second MRI scan were unrelated to the March 1985 accident. Dr. Steven Snatic, a neurologist was also consulted concerning the "spots" on Mrs. Meche's MRI scan. Dr. Snatic was not able to find the cause of the spots but he did state that he would not connect the "spots" or "specks" with the March 15, 1985 automobile accident.
Although at trial Mrs. Meche continued to complain of intermittent headaches and neck pain plus loss of grip strength, it is possible that the jury, considering the testimony as a whole, concluded that Mrs. Meche's injuries attributable to the 1985 accident had resolved themselves (if not completely) to a large extent within six *352 months following the accident. We therefore refuse to disturb the awards to Mrs. Meche for pain, suffering and medical expenses.
Linda Meche was also awarded $5,000.00 for loss of income. She testified that before the accident she would work at the family business one day a week and that she returned to work in November of 1985. In light of plaintiff's own testimony, we find the award for lost wages generous but not so generous as to be an abuse of discretion.

THE ARBITRARY AND CAPRICIOUS CLAIM
The trial judge, in his reasons for judgment, stated the following in denying plaintiffs' claim for penalties and attorney's fees:
"The Court finds that considering the long period of medical treatment to both of these parties and the numerous bills over a long period of time which were submitted to State Farm; State Farm's prompt payment of the bills as received; further, considering the difficulty of taking depositions of the medical witnesses, not only from the testimony of the witness, but from the Court's own knowledge; also, considering that State Farm has tendered, although more than sixty (60) days after having knowledge of the claim of Linda Meche, an amount in excess of the verdict; and considering its tender to Mrs. Meche of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS on February 27, 1987, and ultimately a tender and payment of a total of ONE HUNDRED FIVE THOUSAND AND NO/100 ($105,000.00) DOLLARS, the Court finds that State Farm was not arbitrary and capricious."
We find no clear error in this determination and affirm the trial judge's decision not to award penalties and attorney's fees.

COSTS
Finally, we turn to Linda Meche's allegation that the trial judge erred in casting her with 25% of the court costs. Generally, the costs of court are part of the liability to which the party cast in judgment is subject, however, the court may render judgment for costs against any party as it may consider equitable. La.C.C.P. art. 1920; Bowman v. New Orleans Public Service, Inc., 410 So.2d 270 (La.App. 4th Cir.1982).
In the instant suit, the jury awarded Linda Meche a total of $32,000.00 in damages. Prior to trial, Mrs. Meche had received by tender from Travelers and State Farm $38,314.03. Since Mrs. Meche was unsuccessful at trial in increasing the amount of monies she received as compensation for her damages, it was not inequitable for the trial court to cast her with a portion of the costs.
For the reasons stated, we reverse that portion of the trial court judgment finding more than one State Farm policy available to plaintiff, Fred Meche, for uninsured/underinsured motorist coverage and accordingly, reverse that part of the trial court's judgment dated December 14, 1987 casting State Farm Mutual Automobile Insurance Company in judgment to Fred Meche for the sum of $67,000.00 plus judicial interest. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs, Fred and Linda Meche.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Other definitions in the policy include: (a) personmeans a human being; (b) you or yourmeans the named insured or named insureds on the declarations page; and, (c) your carmeans the car or the vehicle described on the declarations page.